NEW ENGLAND HEALTH CARE
EMPLOYEES WELFARE FUND, and NEW
ENGLAND HEALTH CARE EMPLOYEES
PENSION FUND,

Plaintiffs,

v.

iCARE MANAGEMENT, LLC; CHELSEA
PLACE CARE CENTER, LLC; TRINITY
HILL CARE CENTER, LLC;
WINTONBURY CARE CENTER, LLC;
FARMINGTON CARE CENTER, LLC;
MERIDEN CARE CENTER, LLC, a/k/a
SILVER SPRINGS CARE CENTER;
WESTSIDE CARE CENTER, LLC;
BIDWELL CARE CENTER, LLC; and
KETTLE BROOK CARE CENTER, LLC,

Defendants.

3:10-cv-00894 (CSH)

May 2, 2011

## RULING ON PLAINTIFFS' MOTION FOR PREJUDGMENT REMEDY AND DEFENDANTS' MOTION TO STAY PROCEEDING

HAIGHT, Senior District Judge:

Plaintiffs (collectively, "the Funds") seek a prejudgment remedy ("PJR") to secure from the

Defendants (collectively, "the Employers") their claimed damages. The parties have fully briefed

the issue, including providing supplemental briefing, and appeared before the Court via

teleconference. [Doc. 44.] The PJR application is now ripe for decision. For the following reasons,

the Funds' PJR application will be granted.[1]

---

[1] The Employers had moved to stay this case pending the Second Circuit's decision in
the related case of *Welfare Fund et al v. Bidwell Care Center, LLC et al*, No. 10-1859-cv. [Doc.
20.] As the Second Circuit issued its Summary Order affirming the District Court on April 6,

## I.    BACKGROUND

### A.    The Current Dispute

#### 1.    The Parties

The Plaintiff Funds are Taft-Hartley multi-employer trust funds established under the terms of the Labor Relations Management Act, 29 U.S.C. § 185(c)(5), to provide welfare and pension benefits to members of the New England Health Care Employees Union, District 1199 ("the Union"). The Funds are administered by a board of trustees comprised of both Employer and Union officers or members. The Funds receive contributions from the employers of Union members pursuant to collective bargaining agreements ("CBAs").

The Defendant Employers are eight nursing facilities in Connecticut and iCare Management, LLC, a company that provides management services to those facilities. Each of the nursing facilities is an employer of Union members and a party to the CBAs, while iCare is a "party in interest" as defined by Section 3(14) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(14). Each Defendant Employer is obligated by the CBA to which it is a party to make monthly contributions the Funds.

#### 2.    The Complaint

The Funds filed their Complaint on June 7, 2010 pursuant to Section 515 of ERISA, seeking to recover "delinquent contributions, interest, penalties, and liquidated damages" owed to the Funds by the Employers. The relevant contributions are governed by three separate but materially identical

2011, the Employers' motion to stay the captioned case is DENIED as moot.

CBAs signed by the Employers and the Union.[2] The CBAs require that the Employers make contributions to the Funds based "upon the previous month's gross payroll." The core of this dispute is how the gross payroll is calculated. The CBAs require that the contributions be calculated from the "gross payroll for the Employees in the bargaining unit who regularly work an average of twenty (2) or more hours per week . . . ." ("Contribution Provisions"). The Funds argue that the Employers are in violation of the CBAs by excluding wages paid to workers for contract benefits such as paid vacation, holiday, and sick leave from the monthly gross payroll. Employers respond that they are following the plain language of the CBAs by excluding from the calculation those workers who are not at work but are being paid.

This is not the first time the parties have disputed the calculation of Employer contributions under the CBAs.

### B. Prior Litigation

The Funds and Employers have an extensive litigation history regarding the contribution requirements of their various CBAs. Indeed, the precise issue in this case was litigated previously before Magistrate Judge Joan G. Margolis of the District of Connecticut, *New England Healthcare Employees Welfare Fund, et al. v. iCare Management, LLC, et al.*, No. 3:08-cv-1863, 2009 WL 3571311 (D. Conn. Oct. 26, 2009) (the "Underlying Action"). Judge Margolis's decision in the Funds' favor was recently affirmed by the Second Circuit in a summary order. *Welfare Fund v. Bidwell Care Center, LLC*, No. 10-1859-cv, 2011 WL 1289182 (2d Cir. April 6, 2011) (the

---

[2] Although neither the Complaint nor the Application for the PJR identified or attached the relevant CBAs, subsequent briefing clarified that the operative CBAs when the Funds commenced the Underlying Action on June 7, 2010 had become effective on September 4, 2009 for a three-year period (2009-2011). I will refer to them in text as "the 2009 CBAs."

"Summary Order").[3]

As in the current case, the Underlying Action concerned the parties' differing interpretations as to what contributions the CBAs required in respect of workers who were paid during the relevant time periods but were not actually at work. The Funds brought an action in December 2008 alleging that the Employers were in violation of the then operative 2005 CBAs. Prior to November 2008, the Employers had contributed to the Funds based on the number of hours *paid* to workers, regardless of whether the worker was at actually at work or on paid leave. On November 20, 2008, the Employers notified the Union workers that their prior contribution practice was inconsistent with the terms of the CBAs and henceforth they would only contribute to the Funds based on hours the workers actually worked.

After a bench trial, Judge Margolis held that the Contribution Provisions in the 2005 CBAs were ambiguous and then used extrinsic evidence, including the Funds' contribution policies, other employer contribution practices, and the Employers' own past practices, to conclude that the 2005 CBAs required contributions based on hours paid. Underlying Action at 24-26. On appeal, the Second Circuit affirmed Judge Margolis's finding that the Contribution Provisions were ambiguous and noted that there was "no clear error" in her determination that the ambiguous provisions included paid hours. Summary Order at 8.

C.      **The Prejudgment Application**

While the Employers' appeal of Judge Margolis's judgment was pending, the Funds filed the current Complaint in the case at bar, alleging that the Employers were continuing to under-contribute

_____

[3] The caption for the Summary Order recites that it was not selected for publication in the Federal Reporter.

to the Funds, with the result that the Funds' damages increased with each inadequate monthly payment. The case was originally assigned to District Judge Bryant. On June 14, 2010, the Funds applied to Judge Bryant for a PJR, seeking thereby to secure the alleged damages while the current action is pending. The case was transferred to the undersigned on December 6, 2010. On January 20, 2011, the Court ordered supplemental briefing to determine whether there were any material and contested factual issues that would require an evidentiary hearing. Following the Court's review of these submissions, the Court held a hearing via teleconference with counsel on February 16, 2011 to discuss the PJR application and whether an evidentiary hearing was necessary to decide the PJR.

## II. STANDARD OF REVIEW

Rule 64 of the Federal Rules of Civil Procedure provides that every prejudgment remedy available under state law is also available to litigants in federal court. Connecticut provides for an expansive prejudgment remedy, and it is under Connecticut law that the Fund's application must be reviewed. The Court discussed the standard of review in its Preliminary Opinion and Order Concerning Plaintiffs' Application for Prejudgement Remedy ("Preliminary Order") [Doc. 31.]in which I said at 7-8:

> The Funds' entitlement to a prejudgment remedy is governed by Conn. Gen. Stat. §§ 52-278a-g. In *Walpole Woodworkers, Inc. v. Atlas Fencing, Inc.*, 218 F.Supp.2d 247, 249 (D.Conn. 2002), Judge Arterton summarized a statutory provision central to the case at bar: "[a]n attachment may issue under Connecticut's prejudgment attachment statute upon a showing of 'probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought . . . will be rendered in favor of the plaintiff.' § 52-278d."
>
> Additional statutory provisions particularly relevant to the Court's resolution of the Funds' application are found in §§ 52-278(c)(g) and

52-278(d)(a).  Subsection (c)(g) provides in part: "[a] defendant may request a hearing to contest the application for a prejudgment remedy, assert any exemption or make a request concerning the posting or substitution of a bond."  Subsection (d)(a) provides in part: "[t]he defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . ."

In *Walpole Woodworkers*, 218 F.Supp. 2d 249, Judge Arterton said of the "probable cause" element:

> Probable cause for these purposes has been defined by the Connecticut courts as a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Thus, the plaintiff does not have to prove its case by a preponderance of the evidence, but must show that there is probable cause to sustain the validity of the claim.

Preliminary Order at 7-8 (citations and internal quotation marks omitted from *Walpole Woodworkers* passage).

As the Connecticut Supreme Court has stated, "[p]robable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false."  *TES Franchising. LLC v. Feldman*, 286 Conn. 132, 137 (Conn. 2008) (citation and quotation omitted).

## III.    DISCUSSION

In the wake of the Second Circuit's affirmance of Judge Margolis's opinion in the Underlying Action, three issues remain to be resolved at this juncture: (1) whether an evidentiary hearing is necessary to decide the PJR application; (2) if no additional hearing is necessary, whether the Funds met their burden of proof to obtain a PJR; and (3) if the Funds have met their burden and demonstrated their entitlement to a prejudgment remedy, what is the amount of damages on their claim that must be secured.

### A.    Is an Evidentiary Hearing Necessary

The Connecticut PJR statute provides that "the defendant shall have the right to appear and be heard at [a] hearing." Conn. Gen. Stat. § 52-278d(a). In the Court's Preliminary Order, the Court determined that a "'hearing' within the context of the PJR statute does not necessarily require an evidentiary hearing with the testimony of witnesses. If the applicant can show by documents, including affidavits, uncontroverted or incontrovertible supporting facts which under governing law reasonably show that probable cause exists to conclude that his claim will succeed, the judgment of attachment should issue." Preliminary Order at 10. An evidentiary hearing is only necessary if there exist "genuine issues concerning material facts." *Id.*

The Funds submit that there are no material factual issues in dispute that would require an evidentiary hearing on whether they are entitled to prejudgment relief. The Employers contend that if the 2009 CBAs' Contribution Provisions are ambiguous (as the Second Circuit has now held, affirming Judge Margolis on the point), an evidentiary hearing is necessary to allow  the Employers to present extrinsic evidence in support of their disputed interpretation of those Contribution Provisions. Specifically, the Employers would present testimony from the President

and CEO of iCare that "when he signed the 2009 CBAs on behalf of the Employers, it was his specific intent to contribute to the Funds based on the consistent practice that had been in effect since November 2008 and is still in effect." Def. Part IV(A) & Part IV(B) Statement Regarding Plaintiffs' Application for Prejudgment Remedy at 3. [Doc. 34.] The Employers might also seek to present corroborating testimony regarding the intent of the Employers in signing the 2009 CBAs. The Employers do not contend that they communicated this intention to the Funds prior to the negotiation and signing of the 2009 CBAs, and the Funds do not dispute that the Employers had the intention of continuing their post-November 2008 interpretation of the Contribution Provisions in the 2009 CBAs.

The Court accepts, for the purposes of the the Funds' PJR application, the propositions that (1) the Employers had the subjective intent to interpret the Contribution Provisions as excluding those workers who were paid for twenty or more hours but did not actually work during that period, and (2) the Employers did not communicate that intent or purpose to the Funds when the 2009 CBAs were being negotiated.

For the reasons that follow, I conclude that no evidentiary hearing is necessary.

## B.    Have the Funds Met Their Burden of Proof

I consider under this heading whether the Funds have met their burden of proof in respect of their entitlement to a PJR. The purpose of a PJR is to secure payment by a defendant of a plaintiff's claims. A plaintiff applying for a PJR must show probable cause to believe that at the end of the litigation the Court will give him judgment against the defendant in an amount which plaintiff seeks to secure by prejudgment remedy. This requires me to take into account all stages of this litigation, including in chronological order the trial before Judge Margolis and her

judgment, the Funds' PJR application to this Court while the Employers' appeal from that judgment was pending, and the Court of Appeals' opinion affirming Judge Margolis's decision and judgment in the Funds' favor.

The Funds' application to this Court for a PJR relied principally upon Judge Margolis's holdings in the Underlying Action that the Contribution Provisions in the 2005 CBAs were ambiguous and that proof from extrinsic sources showed that the Funds had correctly interpreted those provisions. It followed from those conclusions, the Funds contended, that the Employers were liable to them for all monthly underpayments since the Employers unilaterally reduced their contributions, a total amount that increases with every passing month. These circumstances were sufficient, in the Funds' submission, to show statutory "probable cause" to believe that final judgment for the Funds and against the Employers will be rendered in the amount sought to be secured by the prejudgment relief prayed for, thereby entitling the Funds to prejudgment relief.

The Employers' initial opposition to the Funds' PJR application in this Court, filed while the appeal was pending, argued that Judge Margolis had gotten it all wrong and the Second Circuit, perceiving her errors with the assistance of Employers' counsel, would eventually reverse her judgment. If one indulged those assumptions, as I was asked to do, the Funds would have no underlying claim against the Employers and consequently no damages or judgment to secure, thereby mooting the Funds' PJR application because they could not prove the probable cause to expect judgment in their favor necessary to entitle them to a PJR.

However, the case took a quite different turn. The Second Circuit heard argument on the Employers' appeal earlier this year. This Court, anticipating with counsel a certain delay in the Court of Appeals' decision, was engaged in drafting its decision on the Funds' PJR application

when, on April 6, 2011, the Second Circuit filed its Summary Order affirming Judge Margolis's

opinion and judgment in all respects. The Court said at the outset: "We review *de novo* the

magistrate judge's legal conclusions, including whether a contract term is ambiguous, but we defer

to her factual findings, such as the interpretation of an ambiguous provision, unless clearly

erroneous." 2011 WL 1289182, at *1 (citations omitted). The Second Circuit, at a length and with

detail not typically found in summary orders, then quoted the 2005 CBAs' contribution provisions,

recited the conflicting arguments the parties had previously addressed to Judge Margolis, and

decided the core issues as follows:

> Thus, the parties also knew how to distinguish expressly between
> hours "actually worked" and paid hours, and sometimes counted
> unworked absences as time worked. Considering the conflicting
> usage of "work," "actually worked," and "gross payroll," and the
> contribution policies' reference to paid hours, we agree with the
> magistrate judge that the twenty-hour minimum provision is
> ambiguous.
>
> Because the defendants do not here contest the magistrate judge's
> factual determination interpreting the ambiguous provision as
> including paid hours, they have forfeited any such arguments. *In any
> event*, we identify no clear error in that conclusion where the evidence
> showed that defendants included paid hours in determining
> contribution eligibility for ten years and *all other employers followed
> the same practice*.

*Id.* at *3 (citation omitted) (emphases added). The Second Circuit's language following the

emphasized phrase "in any event" shows that whether or not the Employers should be regarded as

forfeiting any argument that Judge Margolis's interpretation was wrong, the Court of Appeals agreed

with her interpretation and had in mind all the sources of extrinsic evidence upon which Judge

Margolis had relied. Her opinion, 2009 WL 3571311, reveals that Judge Margolis used extrinsic

evidence generated by the Funds' contribution policies, other employer contribution practices, and

-10-

the Employers' own past practices, to conclude that the 2005 CBAs resolved the ambiguity by requiring Employer contributions based on hours paid even if not worked (the Funds' interpretation), rather than excluding hours not actually worked even if paid (the Employers' contention). The same analyses apply to the 2009 CBAs, which as noted *supra* contain identical contribution provisions.

Following the Second Circuit's promulgation of its Summary Order, this Court directed the parties to submit supplemental submissions discussing the effect, if any, of the Second Circuit's holdings upon the Funds' pending prejudgment remedy motion before this Court in the case at bar. The parties have complied. The Court has considered the Employers' supplemental statement [Doc. 46] and that of the Funds' [Doc. 47]. The positions the parties take in these submissions are predictable.

The Funds contend that when Judge Margolis's opinion and judgment and the Second Circuit's Summary Order affirming them are read together, the Funds "have established, on the existing record, that probable cause exists that they will prevail on their claim for delinquent contributions against the Employers and are entitled to a prejudgment remedy to secure their claim in the instant action." [Doc. 47] at 6. The instant action, it is useful to recall, was filed by the Funds to recover damages inflicted by the Employers' unilateral decision in November 2008 to exclude from their monthly contributions to the Funds hours paid to Union members but not actually worked by them, to the extent that Judge Margolis's judgment does not award such damages. In that regard, the Funds' damages total increases month by month, as the Employers cling to their interpretation of the CBAs, notwithstanding the unanimous contrary conclusion of four federal judges (one district court magistrate judge and three Second Circuit judges).

While the Employers' post-appeal submission [Doc. 46] does not quite put it this way, their

core contention is that the Second Circuit panel, just like Judge Margolis, got the case all wrong, in respect of both the perceived ambiguity in the 2009 CBAs' contribution provisions (a question of law) and the proper interpretation of those ambiguous provisions (a question of fact).

As to the ambiguity issue, the Employers acknowledge that the Second Circuit's Summary Order "upheld Judge Margolis's determination that the relevant CBA language is ambiguous." [Doc. 46] at 2. Unpersuaded, "[t]he Employers continue to maintain that the relevant language is *un*ambiguous" and, aware that the question is one of law, "are in the process of filing a Petition for an En Banc Hearing." *Id*. (emphasis in the original).

As to the interpretation issue, the Employers analyze the language of the Second Circuit's Summary Order, particularly the two paragraphs quoted *supra* from 2011 WL 1289182 at *3, and conclude from it: "Without a doubt, the Second Circuit utilized the contribution policies for the purpose of *finding* an ambiguity as a matter of law, not *resolving* the ambiguity as a matter of fact." [Doc. 46] at 7 (emphases in original). The Employers seem to read the Summary Order as addressing the ambiguity issue but saying nothing substantive or precedential about how the ambiguity should be interpreted. On the interpretation issue, the Employers apparently have in mind presenting extrinsic evidence to this Court within the context of the Funds' application for prejudgment relief.

That application, one must recall, turns upon whether the Funds have shown "probable cause" to believe that a judgment will be rendered in their favor "in the amount of the prejudgment remedy sought," Conn. Gen. Stat. § 52-278d, or as stated elsewhere, a showing "that there is probable cause to sustain the validity of the claim." *Walpole Woodworkers*, 218 F.Supp. 2d at 249. Accordingly, a plaintiff seeking a PJR "does not have prove its case by a preponderance of the

evidence," *id*.  In short, the Court must decide *now* whether the Funds are entitled to a prejudgment

remedy, without waiting for a final determination of the merits of the underlying claims included in

the case at bar, but instead assessing the probabilities as revealed by the present record.[4]

At the end of the day in the instant case, the Employers must succeed on all the issues raised

by the Underlying Action, the Second Circuit's decision on appeal, and the post-appeal submissions,

to be able to argue it is *improbable* that the Funds will sustain the validity of their claims at the end

of all the litigation (to apply the PJR formula in reverse).  I conclude that I cannot accept that

proposition; or, to state the matter in a more conventional style, I conclude that the Funds have made

the requisite showing of probable cause to believe that they will obtain a judgment from this Court

for damages, measured by the difference in monthly contributions resulting from the Employers'

unilateral change in the calculations in November 2008, in amounts which are not included in the

judgment entered by Judge Margolis in the companion case.  My reasons follow.

On the question of whether the relevant provisions in the 2009 CBAs are ambiguous, we

lesser figures are entirely in the hands of the Second Circuit.  The panel hearing the appeal agreed

with Judge Margolis and held that the contribution provisions *are* ambiguous.  The Employers do

not accept that holding and say they will move for an *en banc* hearing on the question.  The Second

Circuit will grant that motion or not.  If it declines to do so, or hears the case *en banc* and affirms

---

[4]  The principal documents in the present record are the magistrate judge's opinion and
judgment in the Funds' favor in the companion case between the Funds and the Employers, and
the Second Circuit's order affirming them.  The case at bar is different from the typical PJR
application, where at an early stage of the case the plaintiff seeks an attachment to secure a
judgment from the trial court that plaintiff hopes to win and undertakes to show probable cause
that it will.  In the instant case, the Funds as plaintiffs have already received a district court
judgment in their favor on the central issue in the case, which the Court of Appeals has already
affirmed.

the panel's order, even the Employers concede that "such action will constitute *a conclusive determination* that the language at issue in the 2005 CBAs and the 2009 CBAs is ambiguous." [Doc. 46] at 2 (emphasis added).

I am asked, in the PJR context, to evaluate the probability that "a majority of the active judges who are in regular service," Fed. R. App. P. 35(a), will vote to order a rehearing *en banc*. District judges exercise a deference appropriate to their station when predicting what court of appeals judges will do in a particular case. When the question is whether a full court of appeals will rehear a panel decision *en banc*, the analysis begins with Fed. R. App. P. 35(a), which provides in pertinent part:

> An en banc hearing or rehearing is not favored and ordinarily will not be granted unless:
>
> (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or
>
> (2) the proceeding involves a question of exceptional importance.

Rule 35(b)(1) provides in pertinent part that a petition for rehearing *en banc* must begin with a statement that either

> (A) the panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed . . . and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions; or
>
> (B) the proceeding involves one or more questions of exceptional importance . . . ; for example, a petition may assert that a proceeding presents a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue.

A conflict with another Circuit is the only example Rule 35(b)(1)(B) gives of "a question of exceptional importance."

Explaining its refusal to order rehearing *en banc* in *Watson v. Geren*, 587 F.3d 156 (2d Cir. 2009), the Second Circuit used language which quotes or parses Rule 35(a) . The *Watson* majority of active appeals judges refusing to order an *en banc* rehearing gave its reasons in a *per curiam* opinion, 587 F.3d 157-159. "The fact that this issue arises so infrequently lends credence to our view that *en banc* review is not 'necessary to secure or maintain uniformity of the court's decisions.'" *Id.* at 158 (citing and quoting Rule 35(a)(1)). "We adhere to the well-established principle that '*en banc* courts are the exception, not the rule.'" *Id.* (citing and quoting *United States v. American-Foreign S.S. Corp.*, 363 U.S. 685, 689 (1960). "Given that the panel's decision does not seek to depart from existing standards, the issue presented by this appeal is not properly considered a 'question of exceptional importance' within the meaning of Federal Rule of Appellate Procedure 35(a)(2)." *Id.*[5]

While I approach with the requisite deference a question which falls to be decided by higher authority, it seems to me that the odds are very much against the Employers succeeding on their *en banc* petition to the Court of Appeals. That is because of the seeming total absence of those factors which Rule 35(a) and (b), interpreted by cases such as *Watson v. Geren*, identify as militating in favor of *en banc* review. While I have not seen the grounds the Employers have or will assert for *en banc* review, I am unable to discern any conflict between the panel's Summary Order and a decision by the Supreme Court or the Second Circuit or any other Circuit. Three experienced Second

---

[5] At this point in text, the *per curiam* opinion in *Watson* cited to Circuit Judge Newman's article appearing in 50 Brook. L.Rev. 365, 382-83 (1984), under the provocative title *In Banc Practice in the Second Circuit: The Virtues of Restraint*.

Circuit judges issued the Summary Order. The panel was not diluted (one hopes that is not quite the right word) by a district judge or visiting judge. The panel was unanimous; no dissent suggests the existence of a question of exceptional importance requiring *en banc* review. The Summary Order does not seek to depart from existing standards but rather to adhere to them. The issues raised by the Employers' unilateral interpretation of the relevant CBA provisions have apparently not occurred to any other parties in an industry in which such provisions are common, which cuts against a suggestion that the Summary Order raises a question of exceptional importance. The Summary Order affirms, in careful but unremarkable language, the holding of the magistrate judge that the contracts are ambiguous and should be interpreted in a certain way. It is like many other cases.[6] This case fits comfortably within the restraints imposed by the principle that "*en banc* courts are the exception, not the rule." *Id.*

Turning from the ambiguity of the CBAs' contribution provisions to their interpretation, the questions arise: Does the Summary Order undertake to interpret that ambiguous language at all? And if it does, is the panel's interpretation a likely subject for *en banc* review?

The casual reader may be surprised by the first question. So might the three Second Circuit panel judges, who condensed their holdings into the two previously quoted paragraphs from 2011 WL 1289182, at *3 by saying in the first that "we agree with the magistrate judge that the twenty-hour minimum provision is *ambiguous*," and in the second that they found no clear error in the magistrate judge's "factual determination *interpreting* the ambiguous provision as including paid hours" (emphases added). Given the panel judges' structuring of the Summary Order, whose plain

_____

[6] This is not to denigrate the great importance of the case to the parties to it. But that cannot drive *en banc* practice. Every case is important to somebody.

language disposes of both issues, I should think they would be astounded to read in the Employers' confident submission to this Court [Doc. 46] at 7: "Without a doubt, the Second Circuit utilized the contribution policies for the purpose of *finding* an ambiguity as a matter of law, not *resolving* the ambiguity as a matter of fact." With all due respect, I have a doubt. I read the panel's Summary Order as affirming *both* of Judge Margolis's conclusions: on ambiguity (matter of law) and interpretation of the ambiguity (matter of fact). These are not fanciful thoughts on my part; these are the words the Second Circuit panel used.

In any event, it is clear that to avoid liability to the Funds, the Employers must persuade the panel on rehearing or the whole Court of Appeals *en banc* that the panel was wrong in concluding that the CBAs' contribution provisions should be read as the Funds read them. It profits the Employers nothing if the provisions are unambiguous but are not read as the Employers read them (the effect of unambiguous language, like beauty, may lie in the eyes of the beholder). How do the PJR scales of probability tip on this unavoidable issue of interpretation?

The case for the Employers on this issue is that Judge Margolis found the contribution provisions in the 2005 CBAs to be ambiguous. The Second Circuit panel's Summary Order affirmed her on that point. Since the 2009 CBAs' contribution provisions used the same language as the 2005 CBAs, they are ambiguous as well.[7] Accordingly, the parties' intent must be gleaned from extrinsic evidence. Judge Margolis undertook to do that. On their reading of the Summary Order, the Employers argue that it "reaffirms that past practice was the *sole piece of extrinsic evidence* upon

---

[7] The Employers in their current submission do not embrace ambiguity unconditionally. On the contrary: "The Employers continue to maintain that the relevant language is *un*ambiguous. Accordingly, the Employers are in the process of filing a Petition for an En Banc Hearing." [Doc. 46] at 2. Their argument on the interpretation point may be regarded as secondary or in the alternative.

which Judge Margolis construed the putative ambiguous language in favor of the Funds," [Doc. 46] at 3 (emphasis in original), and also "reaffirmed that the sole basis for Judge Margolis's factual determination was past practice prior to November 2008." *Id.* at 4. If one accepts those readings of Judge Margolis's opinion and the Second Circuit's Summary Order affirming it, then the single mound of extrinsic-evidence sand supporting the judgment in the Funds' favor is washed away. The Employers assert that "this Court must interpret the relevant language based on extrinsic evidence of intent *in September 2009,*" and note that "when the 2009 CBAs were signed, the Employers had unequivocally changed their practice and had been contributing to the Funds based on the 'worked' method for almost a year," *i.e.*, since the Employers' unilateral declaration in November 2008. [Doc. 46] at 4 (emphasis in original). The Employers seem to conclude from all this that the sole extrinsic support of "past practice" is washed away because the Employers suddenly and unilaterally abandoned it in 2008; and, the argument continues, there cannot be a practice probative of these parties' intent if the Employers ceased conforming to it.

In the context of a motion by the Employers for an appellate rehearing by the Second Circuit panel or *en banc*, the persuasiveness of that conclusion is primarily for Court of Appeals judges to evaluate. In the PJR context, this Court has a secondary obligation to weigh in a deferential manner the probability of the Second Circuit granting rehearing and vacating the panel's order. But as the trial judge in the instant case, I also have a primary obligation to determine whether the Employers' newly formed interpretation precludes the Funds from demonstrating probable cause under the Connecticut statute to believe they will ultimately succeed on the merits.

Of course, these District Court judicial functions overlap. If one may discern a Second Circuit ruling on the probative effect of industry practice in interpreting identical CBA language to

that at bar, that ruling is binding on this Court in this case, although the Court of Appeals delivered

it in a case bearing a different docket number and governed by 2009 CBAs, rather than 2005 CBAs.

I may perform both judicial functions, secondary and primary, by stating my preliminary

conclusion that the Employers read Judge Margolis's opinion and the Second Circuit's Summary

Order too narrowly. Both judicial works are painted with a broader brush.

Judge Margolis said of the Employers' "new calculation method":

> Conversely, the longstanding contribution method of *all involved parties*, and of *all other contributing employers* to plaintiff Funds (*see* Tr. 46), which is to include all of an employee's paid hours, whether for worked hours or paid time off, when applying the "20 hour or more" contribution requirement, represents a reasonable interpretation of the plain language of the contribution policy, and as such, judicial deference to such policy is required by ERISA. Moreover, as the Second Circuit advised in *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994), the "industry's uniform construction of [a clause to the contrary of defendants' construction] is, in the collective bargaining setting, to be given evidentiary significance by the Courts." In this case, there are fifty employers that contribute to the Pension Fund, yet only defendant Employers believe that the "plain language" of the CBAs requires an alternative method of calculating contributions. (*See* Tr. 25-27).

2009 WL 3571311, at *7 (footnotes and some citations and internal quotation marks omitted)

(emphases added).

The Second Circuit Summary Order succinctly affirmed Judge Margolis's evidentiary

analysis: "In any event, we identify no clear error in that conclusion where the evidence showed that

defendants included paid hours in determining contribution eligibility for ten years *and all other

employers followed the same practice*." 2011 WL 1289182, at *3 (emphasis added).

These judicial analyses make it crystal clear that in the Underlying Action, both Judge

Margolis and the Second Circuit gave significant probative value to industry practice revealed by

the conduct of non-party employers. The Employers' bootstrapping effort to erase that industry practice because they unilaterally chose to disregard it is neither persuasive nor appealing. The Second Circuit spoke directly to that point in the Summary Order when it rejected the Employers' contention that the contribution policies "are irrelevant because they were amended on November 20, 2008, the day defendants sent notices to employees warning of the calculation change," instead approving the magistrate judge's conclusion that "the operative language was unchanged when defendants stipulated to the relevance of the contribution policies for purposes of admission and provided no evidence of a differing version." 2011 WL 1289182, at *2 n.4.

Similarly, I cannot accept the Employers' present contention that "the sole basis for Judge Margolis's factual determination was past practice *prior to November 2008*." [Doc. 46] at 4 (emphasis added). She noted in her opinion: "Although the CBAs expired in March 2009, counsel agreed that the parties are still conducting themselves as if the CBAs are still in effect. (Tr. 15-16)." 2009 WL 3571311, at *2. Judge Margolis clearly had in mind, and based her factual determination of interpretation in part upon, industry practice continuing through the trial before her and up to the date of her opinion on October 26, 2009. Nothing in the Second Circuit's affirmance is inconsistent with this. I do not agree with the Employers' seeming argument that probative evidence of industry practice could not come into being after November 2008, when the Employers abruptly changed their contribution calculations, thereby precipitating the trial which caused that evidence to become relevant. The CBAs' operative language remained unchanged. The Employers' newly discovered interpretation remained at odds with that of the rest of the industry. Evidence of that continuing industry practice, even after November 2008, was and is probative of the parties' intent and mutual understanding.

I return to the probability of the Employers persuading the Second Circuit to vacate the panel's Summary Order on a petition for rehearing on this issue. The most that can be said for the Employers—and it is something of a stretch—is that placed alongside the Funds' interpretation of the CBAs' contribution provisions, the Employers' interpretation "is also reasonable." Summary Order, 2001 WL 1289182, at *2. The work hour provision would then "be ambiguous because it is susceptible to more than one reasonable interpretation." *Id.* (citation internal quotation marks omitted). Judge Margolis held that the Funds' interpretation was correct. The Second Circuit treated her conclusion as a "factual determination" (a/k/a a "finding of fact), applied the standard of review of "clear error," and affirmed her on the point. I regard it as unlikely that the panel or the full court would grant a rehearing in order to disturb any of the panel's reasoning, which adheres to well-established and non-controversial legal principles.

For all the foregoing reasons, I conclude that the plaintiff Funds have shown probable cause that a judgment will be rendered in their favor, as required by § 52-278d. I regard myself as bound by the Second Circuit's rulings on the ambiguity and interpretation questions, unless they are amended or vacated on rehearing. To the extent that I am not bound by what the Second Circuit has said, I am at this preliminary "probable cause" stage persuaded by those words and those of Judge Margolis that the Funds are entitled to the prejudgment relief of attachment. While I have considered all of the Employers' contentions, whether or not discussed *supra*, they do not establish a need for an evidentiary hearing at this stage of the case, considered singly or together.

It remains to consider the amount of the attachment which the Funds require to secure their claims: an amount that continues to increase on a monthly basis as the Employers persist in their contribution calculation.

### C.    Calculating the Remedy

Two principal questions remain with respect to the calculation of the prejudgment remedy, which is to say, the total amount to be included in this Court's order and judgment of attachment.

The first question is whether to include in the remedy the damages denied by Judge Margolis in her Supplemental Memorandum of Decision in the Underlying Action. [Doc. 48 in the Underlying Action.] Judge Margolis denied the Funds damages from May 19, 2009 to November 13, 2009 due to "the absence of sworn affidavits or other substantiation" of the damages calculations submitted by the Funds. *Id.* at 3. The Funds seek to recover in this action damages for the alleged damages since May 19, 2009 to the present. The Funds' instant complaint is based in part upon the alleged inadequacies of the Employers' continuing monthly payments after judgment adverse to the Employers was first entered in the Underlying Action on October 26, 2009. But the Funds also seek to recover in this action amounts for the alleged damages since May 19, 2009 (the beginning of the period excluded by Judge Margolis) to the present. The Employers argue that the doctrine of *res judicata* prohibits the Funds from recovering damages that accrued before November 14, 2009. The Funds' position appears to be that neither *res judicata* nor anything else reduces their right to damages incurred during the period excluded by Judge Margolis.

This is a continuing dispute. The Second Circuit does not appear to have addressed *res judicata* or comparable preclusions on the appeal from Judge Margolis's judgment. Assuming *arguendo* that the Funds did not cross-appeal from this partial denial of damages by the District Court, that may or may not factor into questions of issue preclusion; I intimate no present view on the point.

A second question is the proper damages calculation for the PJR. The Funds submitted an

affidavit in their initial application for PJR identifying damages, as well as in their supplemental briefing in January 2011. However, the January 2011 supplement briefing did not purport to calculate the total delinquency nor include any interest owed. In that regard, the amount inserted in the PJR will have to include appropriate provisions for the monthly increases in the Funds' potential final judgment in this action, if the Employers see fit to continue to use their presently judicially discredited calculation.

In these circumstances, the Court directs the parties to file and serve simultaneously on or before May 16, 2011 updated written submissions calculating the damages that fall within the "probable cause" PJR protocol. Those submissions must assume, without prejudice to subsequent developments, that the Second Circuit will decline any rehearing review of the panel's Summary Order. Reply submissions may be filed and served simultaneously on or before May 23, 2011.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiffs' application for a PJR is GRANTED in principle. Decision on the amount of the relief in practice is RESERVED pending the further submissions directed by this Order and the Court's further Order in the case.

Defendants' Motion to Stay Proceedings is DENIED as moot.

It is so ORDERED.

Dated: New Haven, Connecticut

May 2, 2011

              */s/ Charles S. Haight, Jr.*

Charles S. Haight, Jr.

Senior United States District Judge

-23-