UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEW ENGLAND HEALTH CARE EMPLOYEES WELFARE FUND, and NEW ENGLAND HEALTH CARE EMPLOYEES PENSION FUND,<br><br>　　　　Plaintiffs,<br>　v.<br><br>iCARE MANAGEMENT, LLC; CHELSEA PLACE CARE CENTER, LLC; TRINITY HILL CARE CENTER, LLC; WINTONBURY CARE CENTER, LLC; FARMINGTON CARE CENTER, LLC; MERIDEN CARE CENTER, LLC, a/k/a SILVER SPRINGS CARE CENTER; WESTSIDE CARE CENTER, LLC; BIDWELL CARE CENTER, LLC; and KETTLE BROOK CARE CENTER, LLC,<br><br>　　　　Defendants. | 3:10-cv-00894 (CSH)<br><br>June 29, 2011 |

**RULING ON PENDING MOTIONS**

HAIGHT, Senior District Judge:

Pending before the Court are several motions as well as the damages calculation for the Plaintiffs' ("Funds") successful prejudgment remedy ("PJR") application against the Defendants ("Employers"). For the following reasons, the Employers Motion to Reconsider is **DENIED**; the individual employers are **ORDERED** to satisfy the PJR remedy as detailed in the Third Section of this ruling; and the Funds' Motion to Strike is **DENIED in part**, and **GRANTED in part**.

**I.　　BACKGROUND**

Familiarity with the Court's prior rulings in this case is assumed. On May 2, 2011, the Court issued its Ruling on the Funds' Motion for Prejudgment Remedy and the Employers' Motion to Stay

Proceedings ("PJR Ruling"). [Doc. 48.] The Employers filed a Motion for Reconsideration on May 16, 2011, alleging that the Court erred by relying on an incorrect assumption in determining that no evidentiary hearing was necessary to decide the PJR application. [Docs. 52 & 53.] The Funds filed a memorandum in opposition to the Employers' motion on June 6, 2011. [Doc. 56.] This motion is now ripe for consideration.

In the PJR Ruling, the Court granted the Funds' application for a PJR in principle, but did not determine the damages to be secured. Rather, the Court ordered the parties to provide briefing on the proper calculation of damages for the PJR. They have done so and this issue is ripe for consideration. [Docs. 50, 51, 54, & 55.]

Finally, the Funds have an outstanding Motion to Strike Defendants' Affirmative Defenses that was filed on October 21, 2011. [Doc. 16.] The Employers have filed a memorandum opposing this motion [Doc. 19], to which the Funds replied. [Doc. 23.] Now that the PJR application has been decided, this motion is also ripe for consideration.

## II. EMPLOYERS' MOTION TO RECONSIDER THE PJR RULING

"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). The District of Connecticut's Local Rules require that such a motion include "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." L. R. Civ. P. 7(c)(1).

The Employers argue that the PJR Ruling was "based on a false factual premise." Defs.'

Mem. at 1. In particular, the Employers argue that the Court mistakenly accepted as true that the "[t]he Employers do not contend that they communicated [their intention to continue their post-November 2008 contribution practices] to the Funds prior to the negotiation and signing of the 2009 CBAs." PRJ Ruling at 8. The Employers argue that this assumption was inaccurate given that they "had loudly broadcasted to the world that they had changed their contribution method that began in November 2008." Defs.' Mem. at 4. The Employers point to the letter they sent to both the Funds and the Union on November 20, 2008 as evidence that they communicated their intention to continue this interpretation under the 2009 CBAs. *Id.*

The Employers assert that this mistaken assumption requires reconsideration of "whether there should be an evidentiary hearing to determine if the Employers communicated their intent to the Funds and the Union in 2009." *Id.* at 7. However, the Employers fail to identify any evidence not already in the record that they would present at such a hearing. Indeed, the only evidence they point to as providing evidence of intent regarding the 2009 CBA negotiations is the November 2008 letter, a letter the Court is well aware of and cited in its PJR Ruling. PJR Ruling at 4. Tellingly, prior to the pending Motion for Reconsideration, the Employers did not claim that the November 2008 letter had anything to do with the 2009 CBA negotiations.

In the Court's Preliminary Opinion and Order Concerning Plaintiffs' Application for Prejudgment Remedy ("Preliminary Order"), the Court ordered the parties to file "[a]n itemized statement of factual issues necessary to the determination of the prejudgment remedy motion. Each party's statement should identify, with respect to each issue, the evidence (testimony, exhibits, etc.) the party intends to offer in support of their position." [Doc. 31] at 11. In response to the Preliminary Order, the Employers replied:

> The Employers will present testimony from Chris Wright, President and CEO of iCare, that when he signed the 2009 CBAs on behalf of the Employers, it was his specific intent to contribute to the Funds based on the consistent practice that had been in effect since November 2008 and is still in effect. The Employers may also present corroborating testimony from Michael Plausse, CFO of iCare, and/or Barbara Larson, Vice President of Human Resources of iCare.

Defendants' Part IV(A) & Part IV(B) Statement Regarding Plaintiffs' Application for Prejudgment Remedy ("Employers' Part IV Statement") at 3. [Doc. 34.]

Even accepting the Employers' assertion that their November 2008 letter constitutes extrinsic evidence for the purposes of interpreting the 2009 CBAs, the Employers do not meet their burden for the Motion for Reconsideration. The Employers must demonstrate that the Court overlooked some facts "that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. The Employers seem to argue that the Court should hold an evidentiary hearing because the Court did not consider the November 2008 letter to be evidence regarding the 2009 CBA negotiations. But the Employers do not assert that there is any new evidence to present. The focus on a new evidentiary hearing without any reference to new evidence is bewildering.

The Motion for Reconsideration is denied because the Employers have failed to point to overlooked evidence that "might be reasonably expected to alter" the Court's conclusion that the Funds demonstrated probable cause that they would succeed in the action. I accept that the November 2008 letter may be regarded as evidence that the Employers communicated to the Funds their intent to continue their disputed contribution practices under the 2009 CBAs. But that unilateral expression of intent does not alter the conclusions reached by the Court in its PJR Ruling.

### III. DAMAGES FOR PREJUDGMENT REMEDY APPLICATION

The Court's PJR Ruling did not calculate the amount of damages owed to the Funds. Instead,

the Court ordered supplemental briefing on damages calculation, including whether the damages should include those months of damages that were denied by Judge Margolis in her Supplemental Memorandum of Decision. PJR Ruling at 22-23. The Employers accept the accuracy of the Funds' monthly calculations, but the parties disagree about the time period that damages are owed. They dispute two key issues: (A) whether the Funds are entitled to receive damages that were denied by Judge Margolis in the previous action; and (B) whether the Funds are entitled to damages for the future months of non-compliance. The Court will address these issues in turn.

**(A).** ***Res Judicata* and the Pre-November 2009 Damages**

In her January 13, 2010 Supplemental Memorandum of Decision, Judge Margolis denied the Funds' claim of damages from May 19, 2009 to November 13, 2009 due to "the absence of sworn affidavits or other substantiation" of the damages calculation submitted by the Funds. *Id.* at 3. The Funds filed a Motion for Amended or Additional Findings, which Judge Margolis denied, stating "this Court did not issue its Supplemental Decision without prejudice to renewal for these belated submissions. Plaintiffs [sic] attempt to present additional evidence for this Court's consideration is an attempt to circumvent the purpose of a Rule 52(b) motion." Ruling on Plaintiffs' Motion for Amended or Additional Findings and on Defendants' Motion to Alter or Amend Judgment at 4. [Doc. 55 in No. 3:08-cv-1863.]

The Employers argue that the doctrine of *res judicata* applies to the Funds' claims for damages that were previously litigated by Judge Margolis. The doctrine's requirements are well known. "A final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010) (citing *Maharaj v. Bankamerica Corp.*, 128 F.3d

94, 97 (2d Cir. 1997)).

While it is premature at this stage of the proceedings to decide conclusively whether *res judicata* bars the Funds from recovering damages prior to November 13, 2009, for the purposes of determining the PJR damages, the Court concludes that the Funds may not secure by pre-judgment attachment any damages calculated for a period of time before that date. There is sufficient force to the Employers' invocation of *res judicata* to preclude a judicial finding of probable cause that the Funds will ultimately prevail on this particular issue.

### B. Future Damages

Having decided when the PJR begins, the Court must now decide when the time period for calculation of the PJR amount ends. In their supplement briefing, the Funds argue that they are entitled to the "estimated monthly delinquency that will accrue if this action is not resolved within the next year." Plaintiffs' Supplemental Submission Calculating Damages Sought Under the Court's PJR Order ("Funds Supp. Sub.") at 2. [Doc. 51.] The Employers oppose including speculative relief because the 2009 CBAs—the basis for the Funds' claims—expired on March 15, 2011.

The Court declines to order any speculative damages be included in the PJR, but for a different reason than that asserted by the Employers. The purpose of the PJR is to secure the Funds' interests while the case is pending. But in any case where, as in the case at bar, a defendant's allegedly wrongful conduct is on-going,[1] damages embraced by a successful PJR application would continue to accumulate during the pendency of the action. To continually readjust the PJR damages

---

[1] The phrase "allegedly wrongful conduct" is totally apt in the usual PJR setting, where a plaintiff seeks the security of an attachment at the inception of the case, before any judicial or trial resolution of the underlying merits. In the instant case, this Court will resolve the Funds' PJR application after Magistrate Judge Margolis decided the core contribution calculus issue in favor of the Funds and against the Employers and the Court of Appeals affirmed her decision.

would be burdensome to both the parties and the Court.

In these circumstances, the better remedy is to factor in the amounts of prejudgment interest the Funds will undoubtedly seek and probably recover if they ultimately succeed on the merits of this case. Therefore, the Court concludes that the PJR damages will be for the months of November 2009 to April 2011, which was the last month figures were provided by the Funds.[2]

A. **Calculation of Damages Owed**

In order to satisfy the Court's PJR damages calculation, the New England Health Care Employees Welfare Fund ("Welfare Fund") and New England Health Care Employees Pension Fund ("Pension Fund") are awarded PJR remedies from November 2009 to April 2011.

The following amounts, which include compounded interest of 1.5%,[3] are owed by the individual employers:

| **Employer** | **Welfare Fund** | **Pension Fund** |
|---|---|---|
| Bidwell | $43,909.14 | $ 15,171.46 |
| Chelsea Place | $120,483.08 | $36,081.83 |
| Farmington | $39,323.01 | $13,695.09 |
| Kettle Brook | $0.00 | $6,126.94 |
| Meriden | $48,754.54 | $17,067.70 |
| Trinity Hill | $80,170.29 | $24,700.13 |
| Westside | $60,056.14 | $20,889.43 |

---

[2] The months the Court refers to are the months in which payment were due. As both parties point out the monthly payments are due approximately a month later, so the November 2009 payments are for the October 2009 pay period.

[3] This seemingly modest amount of interest reflects the Funds' own suggested amount compounded monthly. Affidavit of Ellen Alch ¶ 17. [Doc. 51-1.]

| Employer | Welfare Fund | Pension Fund |
|---|---|---|
| **Wintonbury** | **$54,044.41** | **$14,467.20** |

Thus, the Pension Fund is owed $148,199.78 and the Welfare Fund is owed $446,740.61 for a total prejudgment remedy of $594,940.39.

## IV. THE FUNDS' MOTION TO STRIKE

The Funds have moved to strike the Employers' affirmative defenses. Motions to strike affirmative defenses are generally disfavored. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (3d ed. 2004). The standard to prevail on a motion to strike an affirmative defense is demanding. The Funds "must establish that: (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law that might allow the defense to succeed; and (3) they would be prejudiced by the inclusion of the defense." *MTA Metro-North R.R. v. Buchanan Marine, L.P.*, 2006 U.S. Dist. LEXIS 88850 (D. Conn. 2006).

In their Amended Answer, the Employers assert four affirmative defenses. [Doc. 15.] The four defenses may be summarized as follows: (1) the unambiguous language of the CBAs bars the Funds' recovery; (2) the Funds are estopped from recovering damages based on the Employers' current contribution practices because the parties entered into the 2009 CBAs with knowledge of how the Employers interpreted the contribution provisions; (3) the Funds may not recover any damages before November 13, 2009 due to the doctrine of *res judicata*; and (4) some or all of the Funds' claims are precluded on the grounds of collateral estoppel or judicial estoppel based on either *Heffernan et al. v. iCare Management, LLC et al.*, 356 F. Supp. 2d 141 (D.Conn. 2005) or *Brown v. HCRC*, 25 F.3d 90 (2d Cir. 1994).

The Funds have moved to strike all four of the affirmative defenses. [Doc. 16.] The First

Amended Defense, alleging that "[t]he plain language of the applicable CBAs bars the plaintiffs from recovery" cannot succeed given the Second Circuit's recent summary order in *Welfare Fund v. Bidwell Care Center, LLC*, No. 10-1859-cv, 2011 WL 1289182 (2d Cir. Apr 6, 2011). The Second Circuit upheld Judge Margolis's determination that the contribution provisions were ambiguous, and this Court does not have the authority to differ. Because it would cause the Funds prejudice if they again had to argue against this affirmative defense when it cannot legally succeed, the Funds' motion to strike the First Affirmative Defense is **GRANTED**.

In their Second Amended Defense, the Employers assert that the Funds are estopped from recovering damages because of the specific facts surrounding the 2009 CBA negotiations. The Funds argue that, as third-party beneficiaries of the CBAs, they have a statutory right to contribution independent of any conduct of the CBA negotiations. The factual and legal merits of this defense are uncertain and a motion to strike is not the appropriate mechanism to determine those merits. The Funds' motion to strike the Second Affirmative Defense is **DENIED**.

The Employers' Third Affirmative Defense is that *res judicata* bars the recovery of damages prior to November 13, 2009. As discussed above, the Court is not prepared to make a conclusive ruling on this defense but it certainly does not meet the strict standards of a successful motion to strike. The Funds' motion to strike the Third Affirmative Defense is **DENIED**.

The Fourth Affirmative Defense argues that either some or all of the Funds' claims are precluded by either collateral or judicial estoppel. The Second Circuit, in its Summary Order, affirmed Judge Margolis's denial of a judicial estoppel claim with regards to *Brown v. HCRC*. To the extent that the Employers' Fourth Affirmative Defense is asserting the same argument of judicial estoppel, it is appropriate to strike. However, the Second Circuit did not address any claim of

collateral estoppel and so the defense may proceed insofar as it does not contradict the Second Circuit's Summary Order. The Funds' motion to strike the Fourth Affirmative Defense is **DENIED** in part and **GRANTED** in part.

## V. CONCLUSION

For the foregoing reasons, the Employers' Motion to Reconsider is **DENIED**, the individual employers are **ORDERED** to satisfy the foregoing damages awarded to the Funds for their successful PJR application, and the Funds' Motion to Strike is **DENIED in part**, and **GRANTED in part** as discussed above. Finally, counsel for the parties are **ORDERED** to confer and submit a revised Rule 26(f) Report on or before July 15, 2011.

Dated: New Haven, Connecticut
          June 29, 2011

                                                */s/ Charles S. Haight, Jr.*
                                                Charles S. Haight, Jr.
                                                Senior United States District Judge